T.C. Memo. 1997-130

UNITED STATES TAX COURT

SPENCER MEDICAL ASSOCIATES, AUTOMOTIVE VENTURES, INC. F/K/A
SPENCER TOYOTA, INC., TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17212-95.                     Filed March 12, 1997.


D. Christopher Ohly and Kevin F. Leahy, for petitioner.

Karen E. Chandler, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Chief Judge:  By Notice of Final Partnership
Administrative Adjustment (FPAA) dated June 6, 1995, respondent
determined an upward adjustment in Spencer Medical Associates'
ordinary income for 1990 in the amount of $1,084,547.  Unless
otherwise indicated, all section references are to the Internal

Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issue for decision is whether Spencer Medical Associates has a duty of consistency in its treatment of a tax shelter investment on its Federal income tax returns for 1983 and 1990.

### FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petition was filed, Spencer Medical Associates (Spencer Medical) was a Maryland general partnership with its principal place of business in St. Mary's, West Virginia.

Spencer Medical was formed on November 18, 1983. Spencer Toyota, Inc., now known as Automotive Ventures, Inc., (petitioner) was the tax matters partner for Spencer Medical in 1990. Spencer Toyota, Inc., was also the tax matters partner for Spencer Medical Associates II, a Texas general partnership.

On December 1, 1983, Spencer Medical entered into a contract with Coral Sociedade Brasileira de Pesquisas e Desenvolvimento Ltda. (Coral) (the 1983 Coral contract) under which Coral was to conduct medical research and development with respect to four specified reagents. The total consideration to be paid by Spencer Medical to Coral as stated in the 1983 Coral contract was 2,873,600,000 Brazilian cruzeiros (Cr$), which amount was equivalent on December 1, 1983, to $3.2 million U.S. dollars (US$). One-eighth of the stated consideration was paid in U.S.

dollars ($400,000) when the contract was executed. The balance of the stated consideration was reflected in a Cr$2,514,400,000 promissory note from Spencer Medical to Coral (the Coral note), the equivalent (in 1983) of US$2.8 million.

The Coral note was payable in Brazilian cruzeiros in four equal payments on December 1 of each of the years 1990, 1991, 1992, and 1993. Each payment was to consist of one-fourth of the original Coral note principal (Cr$628,600,000) and all accrued interest as of the date of the payment. At the time the Coral note was executed, the principal payment due on December 1, 1990, was the equivalent of US$700,000.

Spencer Medical's Federal income tax return for the calendar year ended December 31, 1983, was timely filed with the Internal Revenue Service Center in Philadelphia, Pennsylvania. On its 1983 return, Spencer Medical claimed a research expense deduction in the amount of $3.2 million. The return did not disclose that the research expense arose out of a promissory note or out of a transaction with Coral. Spencer Medical's 1983 return was not examined by the Internal Revenue Service (IRS) prior to April 15, 1987.

Spencer Medical's Federal income tax return for the calendar year ended December 31, 1990, was filed with the Internal Revenue Service Center in Philadelphia, Pennsylvania, on October 21, 1991.

The December 31, 1990, conversion rate of the Brazilian cruzeiros was Cr$16,020,000 to US$1, and the conversion rate did not vary significantly from the rate on the due date of the 1990 Coral note payment.  Spencer Medical did not report the difference between the 1983 value (US$700,000) and the 1990 value (approximately US$39) of the Coral note principal payment due to Coral in 1990 as gain on its 1990 return.  Spencer Medical's 1990 return reflected a liability for interest in the total amount of $384,586, payable on December 1, 1990.  Spencer Medical did not report the difference between the 1983 value (US$384,586) and the 1990 value (approximately US$0) of the Coral note accrued interest payment due to Coral in 1990 as gain on its 1990 return.

Spencer Medical never paid the Coral note principal or the interest accrued as of December 1, 1990, due on December 1, 1990. Spencer Medical never received a demand for payment nor has any other action been initiated by Coral to collect the principal and accrued interest payment due from Spencer Medical on December 1, 1990.

Coral investments were sold by Allen F. Campbell (Campbell) of Dallas, Texas, during 1982, 1983, 1984, and 1985 to more than 170 different entities throughout the United States.  In March 1984, James I. Gibb (Gibb), a revenue agent, was assigned to the "injunction group" in Dallas.  The job of the injunction group was to investigate promoters of abusive tax shelters.

Thereafter, Gibb was assigned to investigate Coral and Campbell for violating sections 6700 and 6701.

An injunction case was filed by the Government against Campbell on April 2, 1984, in the United States District Court, Northern District of Texas, Dallas Division (District Court). Gibb was assigned to assist the Department of Justice attorneys with the Campbell case.

In response to interrogatories in the Campbell case, a list of all U.S. entities contracting with Coral (the project list) was filed with the District Court on January 14, 1987. The project list did not contain taxpayer identification numbers, addresses, or individuals involved in any of the listed entities that had entered into contracts with Coral or the year that such contracts were entered. Spencer Medical's 1983 contract is reflected as client number "89 Spencer Medical Associates".

The project list was first located by Gibb in February 1987. Of the 172 contracts on the project list, approximately 125 had been identified prior to the location of the list. Prior to the discovery of the project list, Spencer Medical had not been identified by the IRS as one of the entities contracting with Coral.

Partnership adjustments attributable to contracts entered into by other entities, unrelated to Spencer Medical, with Coral in 1982 were litigated in Agro Science Co. v. Commissioner, T.C. Memo. 1989-687, affd. 934 F.2d 573 (5th Cir. 1991). Spencer

Medical neither was a party to the <u>Agro Science Co.</u> litigation nor agreed to be bound by our opinion in <u>Agro Science Co.</u> The <u>Agro Science Co.</u> case was not decided until after the period of limitations for Spencer Medical's 1983 tax year had expired.

Spencer Medical timely executed a Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership for 1990, extending the time for such assessment to June 30, 1995. Respondent timely sent to Spencer Medical a FPAA for 1990.

OPINION

Respondent determined that Spencer Medical realized foreign currency transaction gain in 1990 due to the devaluation of the Brazilian cruzeiro between 1983 and 1990. Respondent's adjustments are based on treating the Coral note as bona fide indebtedness. Petitioner argues that respondent's determination is incorrect because promissory notes similar to the Coral note on which she based her adjustments were determined in <u>Agro Science Co. v. Commissioner</u>, <u>supra</u>, to be invalid. Thus, petitioner contends that it can have no foreign currency transaction gain because the Coral note is invalid. Respondent does not deny that, in <u>Agro Science Co.</u>, certain Coral notes were determined to be invalid. Respondent argues that she relied on Spencer Medical's 1983 return, wherein the Coral note was treated as valid and research expenses equaling the 1983 value of the Coral note (US$3.2 million) were deducted, and that Spencer

Medical has a duty of consistency to continue to report the Coral transaction in 1990 as if the Coral note were valid.

The Court of Appeals for the Fourth Circuit, to which an appeal in this case would lie, has recognized the existence of a duty of consistency. See Interlochen Co. v. Commissioner, 232 F.2d 873, 877-878 (4th Cir. 1956), affg. 24 T.C. 1000 (1955). The duty of consistency applies when: (1) The taxpayer made a representation or reported an item for Federal income tax purposes in one year, (2) the Commissioner acquiesced in or relied on that representation or report for that year, and (3) the taxpayer attempts to change that representation or report in a subsequent year, after the period of limitations has expired with respect to the year of the representation or report, and the change is detrimental to the Commissioner. Herrington v. Commissioner, 854 F.2d 755, 758 (5th Cir. 1988), affg. Glass v. Commissioner, 87 T.C. 1087 (1986); Unvert v. Commissioner, 72 T.C. 807, 815 (1979) (quoting Beltzer v. United States, 495 F.2d 211, 212 (8th Cir. 1974)), affd. 656 F.2d 483 (9th Cir. 1981). When the duty of consistency applies, the Commissioner may proceed as if the representation or report on which she relied continues to be true, although, in fact, it is not. Herrington v. Commissioner, supra at 758.

The parties agree that the first and third elements of duty of consistency are present. The parties disagree as to the presence of the second element.

The second element exists when a taxpayer files a return that contains an inadequately disclosed item and respondent accepts that return and allows the period of limitations to expire without an audit of that return.  Id.; Mayfair Minerals, Inc. v. Commissioner, 56 T.C. 82, 88 (1971), affd. per curiam 456 F.2d 622 (5th Cir. 1972); see Hughes & Luce, L.L.P. v. Commissioner, T.C. Memo. 1994-559, affd. on another issue 70 F.3d 16 (5th Cir. 1995).

Spencer Medical indisputably did not provide sufficient facts to give the IRS actual knowledge of the 1983 Coral contract.  Spencer Medical's 1983 return did not disclose that the claimed research expense arose out of a promissory note or out of a transaction with Coral.  The transaction was not examined in any prior examination of Spencer Medical.  Compare Erickson v. Commissioner, T.C. Memo. 1991-97; Gmelin v. Commissioner, T.C. Memo. 1988-338, affd. without published opinion 891 F.2d 280 (3d Cir. 1989).

Petitioner argues, however, that the project list that was discovered by Gibb in February 1987 provided the IRS with a reason to know on or before April 15, 1987, that Spencer Medical invested in Coral in 1983 and claimed erroneous expenses.  In addition, petitioner argues that the IRS had the capabilities to identify the necessary information regarding the clients on the project list by using the IRS computer data bases.  (Proffered expert testimony on this subject was excluded because petitioner

failed to comply with Rule 143(f).)  Petitioner also argues that, because respondent issued a FPAA to Spencer Medical Associates II, a partnership with the same tax matters partner as Spencer Medical, concerning adjustments related to a 1985 Coral investment, respondent had knowledge of Spencer Medical.

In all of the cited cases dealing with the duty of consistency and specifically addressing whether the Commissioner had actual or constructive knowledge of the erroneously reported item, the focus was on information supplied by the taxpayer on the return for the year of the erroneous reporting or otherwise developed upon audit of that return.  In Mayfair Minerals, Inc., moreover, the Court rejected the taxpayer's contention that reporting of the transaction on a return for a subsequent year, filed by the same taxpayer, gave notice to the Commissioner of the relevant facts in time to disallow the deductions for earlier years.  The Court stated that "this argument borders on the facetious."  Mayfair Minerals, Inc. v. Commissioner, supra at 91.

Petitioner seeks to equate information fortuitously discovered during the investigation of another person with information provided by the taxpayer on the return or during an audit of the return on which the item was erroneously reported. Petitioner's position supposes that the agent assisting the Department of Justice in an investigation of Campbell should have turned immediately to tracking down Spencer Medical upon receipt

of one of many documentary exhibits collected in that investigation.

Here the taxpayer is attempting to turn the shield of the statute of limitations into a sword and to turn on its head a doctrine intended to minimize the availability of a double deduction. The disputed element of the duty of consistency is the Government's reliance on the taxpayer's representation as to the treatment of an item on the return; if the taxpayer has disclosed on the return or during an audit questions about that treatment, the Government cannot show reliance. Under the circumstances of this case, we do not believe that disclosure of facts suggesting possibly erroneous treatment of an item 2 months prior to the expiration of the period of limitations is sufficient to terminate reliance for purposes of the duty of consistency doctrine.

Finally, petitioner argues that respondent should be estopped from making the adjustment in issue here because of the success of the argument in Agro Science that the deduction allowed to similarly situated partnerships was invalid. In this regard, this case is indistinguishable from Herrington, and the result should be the same. See also Alling v. Commissioner, 102 T.C. 323, 333-336 (1994), affd. without published opinion sub nom. Handelman v. Commissioner, 57 F.3d 1063 (2d Cir. 1995), affd. without published opinion sub nom. Eisenman v. Commissioner, 67 F.3d 291 (3d Cir. 1995) ("the substance of * * *

[taxpayers'] position is that, under the guise of a duty of consistency on the part of respondent, they are entitled to 'the practical equivalent of a double deduction'.  See <u>United States v. Skelly Oil Co.</u>, [394 U.S. 678, 684 (1969)]").

Petitioner failed to present any evidence at trial or any other argument at trial or on brief contesting the correctness of the adjustments as determined by respondent.  Respondent's adjustments will be sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.